UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ADAM SANDERS,<br><br>Petitioner,<br><br>v.<br><br>KENNETH LIZOTTE,<br><br>Respondent. | ) | Civil No. 26-11537-LTS |

MEMORANDUM AND ORDER ON
RESPONDENT'S MOTION TO DISMISS (DOC. NO. 17)

September 10, 2026

SOROKIN, J.

Adam Sanders, a prisoner at the Massachusetts Correctional Institution in Norfolk, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Sanders filed his federal claims more than eighteen years after the conviction and sentence he wishes to challenge became final, and after unsuccessfully seeking collateral relief numerous times in state court. Because the petition is untimely, it is DISMISSED.

## I. BACKGROUND

In June 2003, after a jury trial in Plymouth County Superior Court, Sanders was convicted of first-degree murder and unlawful possession of a firearm. Commonwealth v. Sanders, 885 N.E.2d 105, 110 (Mass. 2008). The charges arose from a fatal shooting four years earlier outside an after-hours club in Brockton, Massachusetts. Id. at 110–11. Sanders timely appealed to the Supreme Judicial Court ("SJC"). Doc. No. 17-1 at 8.[1] Meanwhile, he filed his

[1] Citations to "Doc. No. __ at __" reference items filed on the Court's electronic docket ("ECF") using document and page numbering that appears in the ECF headers.

first motion for a new trial ("MNT"). Id. at 9. That MNT was denied in July 2005 after a non-evidentiary hearing. Id. Sanders sought reconsideration, which was denied in September 2005. Id. at 10. He timely appealed, and the SJC consolidated that appeal with his pending direct appeal. Id. On April 30, 2008, the SJC affirmed Sanders's conviction and the denial of his first MNT. Sanders, 885 N.E.2d at 110. Sanders petitioned for rehearing, which the SJC denied on July 10, 2008, Doc. No. 17-2 at 2. To this point, Sanders was represented by counsel.

On August 13, 2008, representing himself, Sanders filed a second MNT. Doc. No. 17-1 at 10. After a non-evidentiary hearing, the second MNT was denied in October 2008. Id. at 11. A single justice of the SJC denied Sanders's application for leave to appeal that ruling on February 9, 2009, then denied reconsideration on February 24, 2009.[2] Doc. No. 17-5.

On August 13, 2009, still self-represented, Sanders filed his third MNT, alongside motions for post-conviction discovery, funds, and court-appointed counsel. Doc. No. 17-1 at 11. In November 2009, an attorney filed a limited appearance on behalf of Sanders, and shortly thereafter a hearing was scheduled on the MNT. Id. A week later, the attorney moved to continue the hearing. Id. On December 1, 2009, the Superior Court cancelled the hearing without rescheduling it. Id. The attorney never requested a new hearing date, nor did he make any further filings.

Nothing happened for the next seven years. On March 1, 2017, Sanders filed a pro se "supplemental motion" for post-conviction relief. Id. He followed it days later with requests for post-conviction discovery and a stay. Id. In May 2017, the Commonwealth was directed to

[2] Under Massachusetts law, denials of post-conviction motions filed after the conclusion of direct appeals in first-degree murder cases are subject to review by the SJC only if a single "gatekeeper" justice determines the appeal "presents a new and substantial question." Mass. Gen. Laws ch. 278, § 33E.

respond to the supplemental motion, Sanders's previous counsel was dismissed, and proceedings were stayed to permit review by the Committee for Public Counsel Services ("CPCS"). Id. On October 30, 2017, after the Commonwealth filed its opposition, the CPCS attorney screening the case asked the state court not to act on Sanders's motion while her review continued. Id. at 12. That lawyer never amended or supplemented Sanders's motion, nor did she otherwise request that proceedings resume.

Another lengthy period of inaction followed. Nearly five years later, on June 15, 2022, Sanders filed a pro se motion for post-conviction discovery and forensic analysis. Id. The Commonwealth opposed, then the state court held a non-evidentiary hearing which Sanders attended. Id. The motion was denied on September 8, 2022. Id.; Doc. No. 21-1.[3] In its written memorandum of decision, which summarized the procedural history of the case, the state court described Sanders's first and second MNTs (both of which had been litigated to resolution) but did not mention the two later motions as to which Sanders had halted proceedings. Doc. No. 21-1 at 2–3. Sanders did not appeal the denial of his discovery motion. Doc. No. 17-1 at 12.

Two months later, another attorney made a limited appearance, replacing the previous CPCS lawyer and requesting access to transcripts and impounded materials in the state-court file. Id. at 12–13; cf. id. at 13 (reflecting Sanders requested transcript copies for himself in 2023). That lawyer took no further action on Sanders's behalf.

On January 21, 2025, more than two years after the denial of his last pro se motion, Sanders filed a new batch of motions in state court. He sought appointment of counsel, funds for

[3] The discovery Sanders sought at the time was independent testing of ballistics evidence. The state court's denial arose from a finding that he had not shown such analysis was unavailable at the time of his trial. Doc. No. 21-1 at 5–6. The state court also noted that Sanders's trial counsel had hired a ballistics expert but had not called the person as a witness because their conclusions were consistent with those of the Commonwealth's testifying expert. Id.

various categories of scientific analysis, discovery, a stay, and permission to file amended motions for post-conviction relief and an evidentiary hearing. Id. These motions raised issues concerning the Commonwealth's alleged non-disclosure of various documents Sanders had later obtained and alleged were exculpatory. All were denied in a written decision dated July 11, 2025. Id. at 13–14; see Doc. No. 1-2 at 13–25. Sanders timely sought leave to appeal to the SJC, but his gatekeeper petition was denied by Justice Wolohojian on March 9, 2026, Doc. No. 17-1 at 15, upon a finding that the issues Sanders sought to raise were not "substantial" (even assuming they were "new"). See Doc. No. 1-2 at 1–12.[4] Sanders's request for reconsideration of that ruling was denied on March 20, 2026. Doc. No. 17-1 at 15.

Promptly afterward, Sanders filed the federal petition now pending. He raises a series of claims that each derive in some way from his assertion that exculpatory evidence was not timely disclosed by police and prosecutors. See generally Doc. No. 1.

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year period of limitation on applications for writs of habeas corpus, and provides that such period "shall run from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

[4] In recounting the procedural history, the state-court judge resolving the 2025 motions noted that Sanders "withdrew" his 2009 and 2017 MNTs. Doc. No. 1-2 at 16. Justice Wolohojian did not repeat that characterization, but described proceedings on those motions as having been delayed or stayed at the request of Sanders or counsel, then wrote that "the motions were never subsequently revived [by Sanders] or ruled on" by the motion court. Id. at 3.

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Statutory tolling of the limitation period is permitted for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision is central to assessing the timeliness of the petition presently before the Court.

Sanders's judgment of sentence became final on October 8, 2008, when the ninety-day period for seeking certiorari in the United States Supreme Court on direct appeal expired. See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012); see also Sup. Ct. R. 13(3) ("[I]f a petition for rehearing is timely filed in the lower court . . . the time to file the petition for a writ of certiorari . . . runs from the date of the denial of rehearing"). Absent tolling or a statutory exception, then, Sanders was required to file his federal petition on or before October 8, 2009.

Here, the limitation period was tolled from the start. Sanders's second MNT was properly filed in August 2008, before his conviction became final, and it was pending until the SJC's denial of reconsideration on February 24, 2009. As a result, the one-year limitation period did not begin until then, and his federal petition was due a year later, by February 24, 2010. The timeliness of Sanders's petition depends on the effect of his subsequent state-court motions.

When Sanders filed his third MNT on August 13, 2009, 170 days—not quite half of the one-year period—had elapsed. The respondent appears to concede that the third MNT was properly filed, thereby tolling the limitation period for as long as it remained pending. Whenever the clock next began to run, Sanders had 195 days (just over six more months) left to file his habeas petition. Here, it is not clear precisely how long the third MNT remained "pending." See

28 U.S.C. § 2244(d)(2). The state court never resolved it. Though a hearing on the motion was set, the state court cancelled it at Sanders's request. It then lay dormant for seven years.

Sanders urges the Court to conclude that his third MNT was pending for more than sixteen years, until the SJC's most recent denial of review in March 2026. Doc. No. 19-1 at 7. In his view, the additional motions he filed in 2017, 2022, and 2025 were supplements to the MNT he filed in August 2009, which remained pending all along. If Sanders were correct, his federal petition would be timely. But his argument is not supported by the facts or the law.

For starters, the record reflects that the state courts do not share Sanders's view of his series of motions. Cf. Holmes v. Spencer, 685 F.3d 51, 60 (1st Cir. 2012) (looking to state law to determine whether state post-conviction motion "was properly filed" and pending); Coleman v. Lynds, No. 24-cv-30043-MGM, 2025 WL 3513897, at *4 (D. Mass. Dec. 8, 2025) (same). The state-court judge who denied Sanders's 2022 discovery motion did not list the MNTs as to which proceeding had ceased at Sanders's request when laying out the relevant procedural history in the case, let alone treat those motions as still "pending" or characterize the discovery motion as an extension of any other previous submission. Doc. No. 21-1 at 2–3. Similarly, the state-court judge who denied Sanders's 2025 MNT and its accompanying motions treated those submissions as a new set of requests, coming after two prior motions had been denied and two others "withdrawn." Doc. No. 1-2 at 16. Justice Wolohojian, in her gatekeeper role, also treated the 2025 motions as new submissions, distinct from prior motions that Sanders had never "revived." Id. at 3.

In these circumstances, the Court need not identify with precision how long Sanders's third and fourth MNTs (filed in 2009 and 2017, respectively) were pending. It suffices to note that, as the state courts viewed things, neither of them remained pending by the time Sanders

filed his 2022 discovery motion. Even assuming that motion could have further tolled the limitation period under § 2244(d)(2)—and it likely could not have, see Wall v. Kholi, 562 U.S. 545, 555–56 & n.4 (2011) (discussing limits on types of motions that seek "collateral review" and thus trigger statutory tolling)—it was no longer pending by mid-October 2022, when a month had passed since its denial and Sanders had filed no appeal. The one-year limitation period would have resumed then (at the latest), and expired 195 days later, in April 2023. Sanders's filing of another MNT in January 2025 could not have resuscitated a limitation period that had long ago expired.

Even if there were reason to second-guess the state courts' characterization of the procedural history here, the long periods of inaction by Sanders and the absence of rulings on the 2009 and 2017 MNTs create another obstacle. In Massachusetts, "[t]he failure of a judge to rule on a motion is treated as an implicit denial." Commonwealth v. Dubois, 883 N.E.2d 276, 284 (Mass. 2008). This state-law principle, which the SJC has applied in the context of post-trial motions in criminal cases, id., provides another basis for rejecting Sanders's view that his 2009 MNT remained "pending" across multiple, years-long periods of dormancy. At some point during each of those periods—and, as noted above, the Court need not resolve exactly when—the motions that Sanders had placed on extended hold without taking or seeking further action were implicitly denied. (This likely explains the way multiple state-court judges treated and described those motions in 2022 and 2025.) By the fall of 2022, when proceedings on his discovery motion concluded, none of Sanders's first four MNTs remained pending. The habeas clock therefore resumed, and it ran out long before January 2025.

Given the foregoing, the only avenue remaining for saving Sanders's untimely petition from dismissal is the doctrine of equitable tolling. A petitioner is entitled to equitable tolling of

the one-year limitation period "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); accord Drew v. MacEachern, 620 F.3d 16, 23 (1st Cir. 2010). "[E]quitable tolling is the exception rather than the rule." Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010) (citation modified); see Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007) (noting equitable tolling is "rare[ly]" appropriate).

The diligence standard required by the doctrine of equitable tolling is "reasonable diligence," not "maximum feasible diligence." Holland, 560 U.S. at 653 (citation modified). Extraordinary circumstances, for these purposes, require more than "'garden variety' or 'excusable neglect,'" id. at 651, but less than gross negligence coupled with "bad faith, dishonesty, divided loyalty, mental impairment, or so forth on the lawyer's part," id. at 649 (citation modified).

Sanders "bears the burden of establishing a basis for equitable tolling." Trapp, 479 F.3d at 59. He has not even attempted to make the required showing. Pinning all his hopes on statutory tolling and his belief that his 2009 MNT was pending until 2026, Sanders has not engaged with equitable tolling in his papers at all. As a result, he has failed to identify any extraordinary circumstances warranting equitable tolling, nor has the Court discerned any in its review of the parties' submissions. The two separate, unexplained periods of inaction spanning five or more years apiece—arising as Sanders chose to pursue his claims intermittently in state court rather than present them in a timely manner here—eviscerate any argument that he was reasonably diligent in pressing his federal claims.

On this record, Sanders cannot satisfy his burden of demonstrating that his case is "the exception" in which equitable tolling is merited, rather than "the rule" in which AEDPA's limitation period governs. Accordingly, the time-limiting provisions of AEDPA require that his petition be dismissed.

## III. CONCLUSION

For the foregoing reasons, the respondent's motion to dismiss (Doc. No. 17) is ALLOWED. Sanders's federal habeas petition (Doc. No. 1) is DISMISSED.[5]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

[5] Because "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), and based on the circumstances described above, no certificate of appealability shall issue. Sanders failed to timely bring his federal claims to this Court, and the record does not support a finding of diligence or extraordinary circumstances justifying equitable tolling.